IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2017 Term

_____

No. 15-1161

_____

EDWIN K.,
Respondent Below, Petitioner

v.

BONNIE W., and BUREAU FOR CHILD SUPPORT ENFORCEMENT,
Petitioners Below, Respondents

**FILED**

**April 18, 2017**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

_____

Appeal from the Circuit Court of Gilmer County
The Honorable Jack Alsop, Judge
Civil Action No. 06-D-70

AFFIRMED

_____

Submitted: February 14, 2017
Filed: April 18, 2017

Daniel R. Grindo, Esq.
Law Office of Daniel R. Grindo, PLLC
Gassaway, West Virginia
Counsel for the Petitioner

Dee-Ann Burdette, Esq.
West Virginia Department of Health and
Human Resources, Bureau for Child
Support Enforcement
Charleston, West Virginia
Counsel for the Respondent

JUSTICE WALKER delivered the Opinion of the Court.

SYLLABUS BY THE COURT

1.      "In reviewing a final order entered by a circuit judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of the law to the facts under an abuse of discretion standard.  We review questions of law *de novo*." Syllabus, *Carr v. Hancock,* 216 W. Va. 474, 607 S.E.2d 803 (2004).

2.      "Attributed income means income not actually earned by a parent, but which may be attributed to the parent because he or she is unemployed, is not working full time, is working below full earning capacity, or has non-performing or under-performing assets.  [W. Va. Code 48-1-205(a) (2008)]. Attributed income consists of moneys which a support obligor should have earned had he or she diligently pursued reasonable employment opportunities, or reasonably utilized, applied or invested his or her assets." Syllabus Point 4, *Porter v. Bego*, 200 W. Va. 168, 488 S.E.2d 443 (1997).

WALKER, Justice:

Petitioner Edwin K.[1] appeals the November 2, 2015 order of the Circuit Court of Gilmer County affirming the September 17, 2015 order of the Family Court of Gilmer County making an upward modification of his child support obligations by attributing income based on his prior employment. The West Virginia Department of Health and Human Resources, Bureau for Child Support Enforcement ("BCSE") filed a response on behalf of the mother, Bonnie W. Upon consideration of the parties' briefs and arguments, the submitted record and pertinent authorities, we affirm the upward modification of Petitioner's child support obligation.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The parties were never married but have one child together, who was born on April 27, 2005. By order entered by the family court in October 2007, Petitioner was required to pay Respondent $147.40 per month in child support. Prior to the entry of that order, Petitioner had voluntarily left his employment with an income of $62,000 per year to become self-employed. Although the family court at the time noted that it could have imposed upon Petitioner an obligation based upon the $62,000 per-year salary, the family

---

[1] Because this case involves sensitive facts, we protect the identities of those involved by using the parties' first names and last initials only. *See State ex rel. W. Va. Dep't. of Human Servs. v. Cheryl M.,* 177 W.Va. 688, 689 n.1, 356 S.E.2d 181, 182 n.1 (1987).

court did not do so and instead attributed an income to Petitioner in the amount of the then-current federal minimum wage. At some point after the entry of the October 2007 child support order,[2] Petitioner began employment with an entity identified as Union Drilling, which was subsequently acquired by an entity identified as Sidewinder. The undisputed evidence is that Petitioner's income from Union Drilling/Sidewinder was $86,514 in 2014. Petitioner testified that he left his job with Union Drilling/Sidewinder at the end of 2014 or early 2015 because of lack of work or because he would be required to perform difficult work.[3] In January 2015, Petitioner testified that he became employed with Blue Dot, a pressure testing company. Petitioner stated that he subsequently left his employment with Blue Dot in April 2015 because he "was going to get laid off anyway" and his parents needed help remodeling their home for handicapped needs. Petitioner also contends he left employment with Blue Dot to pursue self-employment as a plumber because he was presented with an opportunity to grow his plumbing business, which had been in existence since the late 1990s. For the period of January to April 2015, Petitioner had income of $15,948.99.

---

[2] Until the underlying petition to modify child support based on a significant change in income was filed in June 2015, no notification was made to the family court on behalf of either party to indicate that Petitioner's income had significantly increased.

[3] The testimony at the hearing regarding the timing and reasons for Petitioner's resignation from Union Drilling/Sidewinder was contradictory.

In June 2015, BCSE filed the underlying petition on behalf of Bonnie W. seeking upward modification of Petitioner's child support obligation due to his significant change in income subsequent to the October 2007 initial child support order. Petitioner did not provide any financial disclosures for past or present income. At a September 2, 2015 hearing, Petitioner testified that his then-current income from his self-employment, in combination with all other sources of income was around $500 per month, which is less than the full-time minimum wage. BCSE argued that the Petitioner's child support obligation should not be based on the federal minimum wage or actual earnings, but his income in 2015 before he voluntarily left employment. Both parties testified relating to income and expenses, and Petitioner was heard on the circumstances surrounding his departure from employment from Blue Dot and his pursuit of self-employment. On September 17, 2015, the family court granted the upward modification, attributed to Petitioner an income of $5,316.33 per month, and ordered him to pay child support in the amount of $580.64 per month effective August 1, 2015.

Petitioner appealed the family court's order to the Circuit Court of Gilmer County, arguing that the family court had not made the necessary findings of fact and conclusions of law necessary to attribute prior income. The circuit court refused the appeal and noted that although the family court did not use the precise language of the statute in its findings, the factual findings were sufficient to attribute prior income and it

was well within the purview and authority of the family court to do so. It is from this order that Petitioner appeals.

## II. STANDARD OF REVIEW

As discussed above, the circuit court affirmed the family court's September 17, 2015 order. In these procedural circumstances, we have held:

> [I]n reviewing a final order entered by a circuit judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of the law to the facts under an abuse of discretion standard. We review questions of law *de novo*.

Syllabus, *Carr v. Hancock,* 216 W. Va. 474, 607 S.E.2d 803 (2004).

## III. ANALYSIS

Petitioner asserts on appeal that the circuit court erred in affirming the September 17, 2015 family court order that made an upward modification of his child support obligation through attribution of income. Petitioner argues that the circuit court erred in finding the court made adequate findings in its order relating to the statutory factors to support upward modification and specifically failed to find that his self-employment is exempt from income attribution pursuant to the applicable statute. We disagree.

4

We have observed that West Virginia Code § 48-1-205 allows a family court or circuit court to attribute income to a parent "when there is evidence that the parent has, without justifiable reason, voluntarily acted to reduce their income." *Porter v. Bego*, 200 W. Va. 168, 175-76, 488 S.E.2d 443, 450-51 (1997). As we explained in Syllabus Point 4 of *Porter*:

> "Attributed income" means income not actually earned by a parent, but which may be attributed to the parent because he or she is unemployed, is not working full time, is working below full earning capacity, or has non-performing or under-performing assets. [W. Va. Code § 48-1-205 (2008)].[4] Attributed income consists of moneys which a support obligor should have earned had he or she diligently pursued reasonable employment opportunities, or reasonably utilized, applied or invested his or her assets.

---

[4] "Attributed income" is defined in West Virginia Code § 48-1-205(a) as follows:

> "Attributed income" means income not actually earned by a parent but which may be attributed to the parent because he or she is unemployed, is not working full time or is working below full earning capacity or has nonperforming or underperforming assets. Income may be attributed to a parent if the court evaluates the parent's earning capacity in the local economy (giving consideration to relevant evidence that pertains to the parent's work history, qualifications, education and physical or mental condition) and determines that the parent is unemployed, is not working full time or is working below full earning capacity. Income may also be attributed to a parent if the court finds that the obligor has nonperforming or underperforming assets.

(footnote added).[5]

West Virginia Code § 48-1-205(b) outlines a three-part test to evaluate whether attribution of income to a parent is appropriate. The statute provides:

> If an obligor: (1) Voluntarily leaves employment or voluntarily alters his or her pattern of employment so as to be unemployed, underemployed or employed below full earning capacity; (2) is able to work and is available for full-time work for which he or she is fitted by prior training or experience; and (3) is not seeking employment in the manner that a reasonably prudent person in his or her circumstances would do, then an alternative method for the court to determine gross income is to attribute to the person an earning capacity based on his or her previous income. . . . [i]n order for the court to consider attribution of income, it is not necessary for the court to find that the obligor's termination or alteration of employment was for the purpose of evading a support obligation.

W. Va. Code § 48-1-205(b) (2015).

---

[5] The original provisions governing attribution of income were in the Code of State Rules. In 1996, the Legislature enacted West Virginia Code § 48A-1A-3 to govern income attribution for purposes of calculating child support. *See Porter*, 200 W.Va. at 173-74, 488 S.E.2d at 448-49. The statute has been amended several times including in 1997, 2001 and most recently in 2008. The applicable statute is now West Virginia Code § 48-1-205. In addition to making minor stylistic changes over the years, the Legislature amended the statute to permit the attribution of income from nonperforming or underperforming assets and to insert the last sentence in subsection (b), which provides that "[i]n order for the court to consider attribution of income, it is not necessary for the court to find that the obligor's termination or alteration of employment was for the purpose of evading a support obligation." W.Va. Code § 48-1-205(b).

The first element requires only that the departure from employment be voluntary and, in this case, that the Petitioner be employed below full earning capacity. Here, there is no dispute that Petitioner left his employment with Blue Dot voluntarily. Although Petitioner claims he "knew he was going to be laid off," he testified that he could have continued working for as long as work was available and further testified that he was not served with any notice that his employer would be making layoffs or that he would be put on low earnings (unemployment benefits). Petitioner submitted no evidence that layoffs were imminent or expected aside from his own testimony that he thought he would be laid off. Petitioner also indicated he left his employment to aid his parents in making their home handicap accessible and in order to pursue self-employment through his existing plumbing business. The undisputed evidence regarding the dormancy and/or lack of profitability of his plumbing business demonstrates that, as compared to his lucrative prior employment with drilling companies, he is employed below full earning capacity. Thus, this first element is readily satisfied from the record.

As to the second element, Petitioner submitted no evidence to rebut the fact that he was able and available for work. Rather, Petitioner's testimony was that he chose to pursue his own business for reasons unrelated to his ability to work.

Petitioner's primary challenge to the court's decision relates to the third element, which provides for attribution where an individual "is not seeking employment

in the manner that a reasonably prudent person in his or her circumstance would do. . . ." W.Va. Code § 48-1-205(b)(3). We have interpreted this element as requiring a family court to "examine what a reasonable, similarly-situated parent would have done had the family remained intact or, in cases involving a nonmarital birth, what the parent would have done had a household been formed." *Porter*, 200 W. Va. at 176, 488 S.E.2d at 451. Petitioner argues that pursuing self-employment and establishing a business is consistent with what the "reasonably prudent person" would do in the same or similar circumstances.

Petitioner further argues that the legislature has enumerated self-employment as exempt from attribution of income. The relevant portions of the statute relied upon by Petitioner are as follows:

> (c)   Income shall not be attributed to an obligor who is unemployed or underemployed or is otherwise working below full earning capacity if any of the following conditions exist:
>
> . . .
>
> (2) The parent is pursuing a plan of economic self-improvement which will result, within a reasonable time, in an economic benefit to the children to whom the support obligation is owed, including, but not limited to, self-employment or education: Provided, That if the parent is involved in an educational program, the court shall ascertain that the person is making substantial progress toward completion of the program[.]

8

W. Va. Code § 48-1-205(c)(2). Petitioner argues that his circumstances are similar to those in *Cassandra W. v. Scott M.*, No. 14-1002, 2015 WL 3448211 (W. Va. May 29, 2015) (memorandum decision). In that case, we discussed this statutory exemption from attribution of income because the parent was pursuing his education. *Id.* at *3. In *Cassandra W.*, the child's father was a contractor for the federal government in Afghanistan. *Id.* at *1. He received a separation letter allowing him to renew his contract for only one month, after which time he would be laid off. *Id.* The father chose not to renew the one-month contract and instead enrolled in training that would be completed in four weeks' time, after which he would be able to obtain a higher rate of employment in the local job market. *Id.* at *1-2. We affirmed the family court's refusal to attribute the income from his former employment as he was pursuing a plan of economic self-improvement that would result in an economic benefit to the child within a reasonable amount of time. *Id.* at *3.

Although the father in *Cassandra W.* did leave his employment while he could have continued to work, his circumstances were vastly different from those in this case. First, as discussed above, Petitioner has not produced any evidence that layoffs were imminent. In contrast, the father in *Cassandra W.* was provided with a notice that he would be laid off in one month. Second, in *Cassandra W.*, there was a finite amount of time (only four weeks) to complete the training program, and the father demonstrated that, upon its completion, he would be able to obtain a higher rate of employment in the

9

local job market. While we acknowledge that self-employment is considered a plan of economic self-improvement pursuant to the statute, Petitioner failed to provide evidence that his plumbing business will result, within a reasonable time, in economic benefit to his child. In fact, as discussed more thoroughly below, his departure from employment from Blue Dot and pursuit of self-employment has and is projected to continue to result in economic detriment to his child, including the loss of health care insurance coverage.

We find the facts and circumstances surrounding Petitioner's departure from employment are more akin to those in *Melinda H. v. William R.*, 230 W. Va. 731, 742 S.E.2d 419 (2013). In *Melinda H.*, the father left full-time employment with a salary of $6,919.48 per month for employment with Marble King, owned by his fiancé's mother, at a rate of $10 per hour. *Id.* at 422, 742 S.E.2d at 734. The family court set his child support obligation pursuant to the $10 per-hour figure. *Id.* In reversing the family court's decision, we noted that, while the father may have had a "long term plan" to run or share in running Marble King with his fiancé, testimony from his future mother-in-law revealed no immediate plans to turn the business over to his fiancé, nor was there any plan to do so in the foreseeable future. *Id.* at 424, 742 S.E.2d at 736. Moreover, the father's income would be based on a small percentage of profits from contracts resulting in no more than a few thousand dollars here and there on a sporadic basis. *Id.* Accordingly, we held that such a "long term plan" was not expected to result in economic benefit to the child within a reasonable amount of time. *Id.*

10

Here, Petitioner's foray into the plumbing business has a similar, vague financial outlook with sporadic earnings that are not expected to result in economic benefit to the child within a reasonable amount of time. Petitioner previously attempted self-employment, having obtained his plumbing license in 1997 or 1998, and has acknowledged that his plumbing business has never been very successful. Petitioner indicated on his 2014 tax return that his plumbing business was dormant. He testified that as of the time of the hearing in 2015, the business had income of $500 per month and expenses of approximately "a couple thousand" dollars per month, and thus it was currently operating at a loss. Petitioner testified that he had been living off of loans and his savings, which had been diminished from around $8,000 to less than $1,000. Petitioner offered no specific evidence of any future financial outlook whatsoever.

It is clear that, had a household been formed, a reasonable, similarly-situated parent would not have left gainful and lucrative employment with health benefits in the local job market to pursue self-employment in a field in which he had been previously unsuccessful and which was not providing ample income to support the business itself, much less its owner and his child. There was no evidence presented that business was becoming profitable or would become successful enough to provide for his child within a reasonable time. To the contrary, there is ample evidence in the record and in the tenor and substance of the family court's questioning to confirm that the statutory

11

tests were applied and the family court determined that the exception did not apply to Petitioner's particular circumstances. Accordingly, although the family court's order did not make explicit findings of fact and conclusions of law in its order relating to application of the three-part statutory test, we find no error.

## IV. CONCLUSION

For the foregoing reasons, we affirm the November 2, 2015 order of the Circuit Court of Gilmer County.

Affirmed.

12