IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2020 Term

_____

No. 19-0591
_____

**FILED**
**November 6, 2020**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

HASSAN G.,
Petitioner Below, Petitioner

v.

TAMRA P.,
Respondent Below, Respondent

_____

Appeal from the Circuit Court of Kanawha County
Honorable Carrie Webster, Judge
Civil Action No. 06-D-165

AFFIRMED IN PART, REVERSED IN PART,
AND REMANDED WITH INSTRUCTIONS

_____

Submitted: October 14, 2020
Filed: November 6, 2020

James T. Cooper, Esq.
Law Office of James T. Cooper
Charleston, West Virginia
Counsel for Petitioner Hassan G.

Erica N. Lord, Esq.
Hardy Pence PLLC
Charleston, West Virginia
Counsel for Respondent Tamra P.

JUSTICE HUTCHISON delivered the Opinion of the Court.

**SYLLABUS BY THE COURT**

1. "In reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo*." Syl., *Carr v. Hancock*, 216 W. Va. 474, 607 S.E.2d 803 (2004).

2. "'Attributed income means income not actually earned by a parent, but which may be attributed to the parent because he or she is unemployed, is not working full time, is working below full earning capacity, or has non-performing or under-performing assets. [W. Va. Code 48-1-205(a) (2008)]. Attributed income consists of moneys which a support obligor should have earned had he or she diligently pursued reasonable employment opportunities, or reasonably utilized, applied or invested his or her assets.' Syllabus Point 4, *Porter v. Bego*, 200 W. Va. 168, 488 S.E.2d 443 (1997)." Syl. Pt. 2, *Edwin K. v. Bonnie W.*, 239 W. Va. 655, 805 S.E.2d 416 (2017).

**HUTCHISON, Justice:**

Hassan G. (petitioner herein) appeals the May 29, 2020, "Final Order Refusing Appeal" of the Circuit Court of Kanawha County that affirmed the June 21, 2018, "Final Order" of the Family Court of Kanawha County.[1] In its order, the family court refused the petitioner's motion for a downward modification of his monthly child support obligation to Tamra P. (respondent herein) for the benefit of their three children.

Having reviewed the parties' arguments, the appendix record on appeal, and the pertinent legal authorities, we affirm the portion of the circuit court's order that left unchanged the amount of income attributed to the petitioner in the parties' original child support order. However, we reverse the circuit court's order insomuch as it and the family court failed to modify child support based upon the fact that two of the parties' children now reside with the petitioner and his family instead of the respondent, and that the respondent's income has substantially increased since the entry of the child support order. Accordingly, we affirm, in part, reverse, in part, and remand this case to the family court for further proceedings consistent with this opinion.

---

[1] Because this case involves minors and sensitive matters, we follow our longstanding practice of using initials to refer to the children and the parties. *See, e.g.*, W. Va. R. App. P. 40(e); *State v. Edward Charles L.*, 183 W. Va. 641, 645 n.1, 398 S.E.2d 123, 127 n. 1 (1990). Although the Bureau for Child Support Enforcement participated in this case in family court, it elected to not participate in this appeal.

## I. Facts and Procedural Background

The petitioner and the respondent were married in 2000 and were divorced by a bifurcated divorce order entered in 2008. The respondent was named the primary residential parent of the parties' three minor children, Z.G.-1, Z.G.-2, and Z.G.-3.

During the family court proceedings to determine an award of child support, the petitioner represented that he was unemployed and had no income whatsoever. He denied having any salary, wages, commissions, bonuses, investments, or revenue from any source. However, after taking evidence, the family court determined that the petitioner was working for his father at a real estate business owned by his parents, including showing real estate, supervising work crews, and negotiating with prospective tenants. The family court also found that the petitioner had income in the form of "loans" from his family and the family business which he was not required to repay, and that his family and the family business provided him with food, housing, a vehicle, clothing, a vacation, and the use of credit cards. Furthermore, the family court determined that the petitioner had voluntarily separated himself from the ownership of a car wash business that had sales of $12,000 per month. After considering the evidence, the family court concluded that this was an appropriate situation to attribute income to the petitioner.[2]

---

[2] *See* W. Va. Code § 48-1-205(a) (2008) defining "attributed income," discussed and quoted in the "Discussion" section of this opinion, *infra*.

The family court concluded that the work the petitioner was performing for his father and the family business was the equivalent of real estate management work for which the federal Bureau of Labor Statistics estimated a value of $7,200 per month. Adding this figure to the monthly income of the car wash business, the family court attributed the petitioner with a gross income of $19,000 per month. At the time, the respondent's gross monthly income was $2,917.00 from a daycare business she owned. Using these figures to calculate child support,[3] the family court entered its February 22, 2010, order directing the petitioner to pay the respondent $2,890.46 per month in child support until a child attains the age of eighteen years.[4]

The petitioner then appealed to circuit court, arguing *inter alia* that the amount of attributed income was excessive and unsupported by the evidence. The circuit court ruled in the petitioner's favor, but the respondent appealed to this Court. After reviewing the matter, this Court concluded that the family court's findings of fact and inferences were supported by substantial evidence and that the circuit court had impermissibly substituted its judgment for that of the family court. Accordingly, on April

---

[3] *See* W. Va. Code § 48-13-403 (2001) "Worksheet for Calculating Basic Child Support Obligation in Basic Shared Parenting Cases."

[4] When the petitioner filed the petition for modification of child support that is the subject of this appeal, all three children were still minors. During the pendency of the appeal, the oldest child turned eighteen years old. For purposes of appeal, we address the facts as they existed at the time the petition for modification was filed and the evidentiary hearings were held in family court.

1, 2011, our Court reversed the circuit court's order and remanded the case for reinstatement of the family court's child support award. *See Hassan G. v. Tamra P.*, No. 101328 (W. Va. Apr. 1, 2011) (memorandum decision).

In the years since the entry of the child support order, the parties have returned to family court several times. The petitioner has repeatedly asserted, unsuccessfully, that he is not financially able to pay $2,890.46 per month. He is significantly behind on his child support payments. Pursuant to an order entered on December 16, 2016, the petitioner was required to make an additional monthly payment of $712.42 toward his child support arrearages for a total payment of $3,602.88 per month. His failure to pay, or fully pay, his monthly child support has resulted in his incarceration for contempt on multiple occasions; the petitioner reports that he has had to obtain money from family and friends to purge the contempt. As of May 2018, the petitioner owed the respondent more than $250,000 in principal and interest on his child support arrearages.

On February 20, 2018, the petitioner filed a motion styled "Petition for Modification of Child Support and Parenting Plan" wherein he once again asserted that the amount of income attributed to him was much higher than his actual earnings. He also asserted that a substantial change in circumstances warranted modification because the two oldest children Z.G.-1 and Z.G.-2, who are teenagers, now reside with him or his parents,[5]

_____

[5] The paternal grandparents live in very close proximity to the petitioner.

4

instead of with the respondent, and that the respondent has had a significant increase in income since the entry of the 2010 child support order. The respondent filed an answer to the petition stating that the two oldest children "do not maintain their primary residence with" her "due to extreme undue influence" by the petitioner. She also admitted that her annual income had increased. She denied the remaining assertions.

The family court held a hearing on April 10, 2018, where the parties and their counsel were present. As a result of that hearing, the family court entered an "Interim Order" on May 2, 2018, finding that Z.G.-1 and Z.G.-2 no longer lived with the respondent. The family court found that Z.G.-1 presently maintains his primary residence with the petitioner and the petitioner's parents, and that Z.G.-2 has maintained his primary residence with the petitioner for the prior two and one-half to three years. Nonetheless, the family court refused to modify the parenting plan and child support order because of a Report of *Guardian ad Litem* that was filed in August 2017.[6] In that report, the guardian *ad litem* ("GAL") at the time, D. Randall Clarke, Esquire, concluded that the petitioner and his relatives had negatively influenced the minor children against the respondent by making

---

[6] The GAL prepared this report in the context of a petition for modification of child support that the petitioner filed in 2017. The family court canceled a scheduled hearing and denied the 2017 petition on the basis of the GAL's written report.

5

derisive comments in their presence. Mr. Clark did not attend or present any evidence during the April 20 hearing, and he was no longer serving as the GAL in the case.[7]

During the April 20 hearing, the petitioner moved that a GAL be re-appointed and that the family court interview the children *in camera*, but the family court denied both motions. Citing the GAL's report, the family court found that "any preferences that would be made by the children to the Court in an interview in chambers would not be trustworthy . . . and there is nothing to be gained by interviewing the children in chambers."

A hearing regarding the remaining issues in the petitioner's motion to modify child support was held by the family court on May 17, 2018. The petitioner testified that he is currently employed full-time as the general manager of a restaurant that is owned by

---

[7] The GAL said in his report that he based his conclusion on what he observed during a "504 meeting" that he attended at school for Z.G.-1, and on the admissions of Z.G.-3. Z.G.-1 has been diagnosed with oppositional defiance disorder and attention deficit hyperactivity disorder, and he has frequently gotten into trouble at school. The meeting was to address his disabilities and his disciplinary infractions. The GAL reported that Z.G.-1 and members of the petitioner's family—particularly an aunt—were rude, yelled, and behaved badly during the school meeting. Moreover, the respondent showed the GAL text messages from Z.G.-1 wherein the teen said hateful things to her.

The petitioner failed to cooperate with the GAL's 2017 investigation, and the GAL was unable to interview Z.G.-1 or Z.G.-2. He did interview Z.G.-3. According to the written report, when the GAL asked Z.G.-3 whether "anyone says bad things about your mom or dad at either mom or dad's home[,]" Z.G.-3 responded that his brother Z.G.-1 talks badly about their mother, but that neither the petitioner nor the respondent talk badly about each other in his presence. Z.G.-3 also said that "sometimes" his paternal grandparents talk badly about his mother, but "Dad, not as much anymore because he says he just doesn't care."

a corporation that is wholly owned by his mother. He testified that he works long hours and is paid a gross salary of $2,253 a month. He reported that his mother sets his salary based upon the restaurant's sales. This restaurant corporation also pays utilities for his personal residence in the average amount of $500 per month and provides him with food. In addition, his family provides him with the free use of a home that he estimates has a fair market rental value of $1,500. He denies owning any assets. Adding together his salary and the value of the utilities and free rent, the petitioner argues that his gross income is only $4,250 per month. The petitioner testified that approximately one month before the hearing, he began receiving welfare and food stamps.

On cross-examination, the petitioner admitted that he continues to perform some work for his father's rental real estate company. Specifically, when a tenant of his father's company fails to pay rent, the petitioner will sometimes go to magistrate court on his father's behalf. He asserts that he does this only as a favor to his elderly father for no compensation. The respondent presented documentary evidence during the family court's hearing proving two such appearances in magistrate court, but the petitioner readily admitted that there were other instances.

With regard to the change in her income, the respondent testified that she now owns two daycare centers. Her testimony regarding her current income was frequently interrupted and is difficult to follow from a review of the transcript, but she produced her tax returns on the day of the May 17 hearing and these returns were made part of the record.

In her 2016 amended federal tax return, she reported a gross income of $106,610, which averages to be $8,884 per month. In her 2017 federal tax return, she reported a gross income of $165,338, which averages to be $13,778 per month. In addition, the appendix record contains an updated "Worksheet A: Basic Shared Parenting" that specifies a gross income for the respondent in the amount of $9,364 per month.

After hearing the evidence, the family court denied the petitioner's petition to modify the parenting plan and child support by "Final Order" entered June 21, 2018. The family court ruled that the petitioner could claim Z.G.-1 as a dependent on his tax returns, but the court refused to re-calculate the child support award on the basis of the two oldest children moving out of the respondent's home and into the petitioner's home. With regard to the petitioner's income, the family court found that the petitioner works for his parents and earns more income than what he testified to. The family court acknowledged that the petitioner was asserting that there was a substantial increase in the respondent's income, but the court's final order failed to make any findings of fact specifying an amount for the respondent's current income. The family court also noted that the petitioner has been held in contempt multiple times for failing to pay child support, and that he continues to be in arrears. The family court concluded that the petitioner "comes to this Court requesting the modification of child support with unclean hands" and, as a result, the court denied the petition to modify.

8

The petitioner appealed to circuit court, which affirmed by order entered on May 29, 2019. The circuit court found that the family court correctly rejected the petitioner's attempt to characterize his continued work in his parents' businesses as work done without remuneration. The circuit court also found no error in the family court's conclusion regarding the alienation of the children's affections and the conclusion about the petitioner's "unclean hands." Upon entry of the circuit court's final order, the petitioner filed this appeal.

## II. Standard of Review

The petitioner appeals the circuit court's May 29, 2019, order affirming the family court's denial of his petition for modification of the parenting plan and child support order. Our standard of review is well-established:

> In reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo*.

Syl., *Carr v. Hancock*, 216 W. Va. 474, 607 S.E.2d 803 (2004). With this in mind, we address the parties' arguments.

## III. Discussion

On appeal, the petitioner raises three assignments of error: that the lower courts erred in refusing to downwardly modify his monthly child support obligation, that

9

the lower courts erred in denying his petition for modification based upon the doctrine of unclean hands, and that the lower courts erred in finding that he works for his parents and earns an income other than what he testified to. The respondent asserts that there is no error and the existing child support award should remain unchanged. Because the petitioner's assignments of error contain overlapping arguments, we will address the issues presented in this appeal by separately examining each of the grounds upon which he sought a modification: his assertion that the amount of his actual income is less than the amount attributed to him; the substantial increase in the respondent's income; and the change of physical custody of the two oldest children.

**A. Petitioner Hassan G.'s income:**

We begin our analysis with a consideration of the petitioner's income. As explained above, since 2010 he has been attributed with a monthly gross income of $19,000. West Virginia Code § 48-1-205(a) (2008) defines "attributed income" as follows:

> "Attributed income" means income not actually earned by a parent but which may be attributed to the parent because he or she is unemployed, is not working full time or is working below full earning capacity or has nonperforming or underperforming assets. Income may be attributed to a parent if the court evaluates the parent's earning capacity in the local economy (giving consideration to relevant evidence that pertains to the parent's work history, qualifications, education and physical or mental condition) and determines that the parent is unemployed, is not working full time or is working below full earning capacity. Income may also be attributed to a parent if the court finds that the obligor has nonperforming or underperforming assets.

This Court has explained the concept of attributed income:

"Attributed income means income not actually earned by a parent, but which may be attributed to the parent because he or she is unemployed, is not working full time, is working below full earning capacity, or has non-performing or under-performing assets. [W. Va. Code 48-1-205(a) (2008)]. *Attributed income consists of moneys which a support obligor should have earned had he or she diligently pursued reasonable employment opportunities*, or reasonably utilized, applied or invested his or her assets." Syllabus Point 4, *Porter v. Bego*, 200 W. Va. 168, 488 S.E.2d 443 (1997).

Syl. Pt. 2, *Edwin K. v. Bonnie W.*, 239 W. Va. 655, 805 S.E.2d 416 (2017) (emphasis added).

The petitioner argues that his actual gross monthly income for his full-time work at the restaurant, including the value of his rent and utilities, is $4,250. He contends that $4,250 should be used in the child support calculations, not the attributed income of $19,000, and that this would result in a change of more than fifteen percent in the amount of his child support obligation. The West Virginia Code provides that "[t]he court may modify a child support order, for the benefit of the child, when a motion is made that alleges a change in the circumstances of a parent or another proper person or persons." W. Va. Code § 48-11-105(a) (2008), in part. Furthermore, "[t]he provisions of the order may be modified if there is a substantial change in circumstances. If application of the guideline would result in a new order that is more than fifteen percent different, then the circumstances are considered a substantial change." *Id.* at 48-11-105(b).

11

The respondent contends that the $19,000 per month in attributed income was expressly upheld in this Court's memorandum decision issued in 2011. She further argues that the petitioner has failed to present any evidence that he is not physically or mentally capable of earning the attributed income, or that conditions have involuntarily changed such that the amount of attributed income should no longer apply. On this issue, we agree with the respondent.

Through the years, the petitioner has repeatedly gone to court to argue that his actual wages are less than $19,000. However, this argument fails to appreciate that his child support obligation was established using attributed income, not actual income. When calculating child support in 2010, the family court concluded that the petitioner could be earning $19,000 per month if he diligently pursued reasonable employment opportunities, such as his car wash business, and if he were fully paid for the work that he performs for his parents' businesses. The family court's decision to attribute income, and the amount of the attribution, were ultimately upheld on appeal. The petitioner has failed to present any evidence to show that he is no longer physically or mentally capable of earning the same amount of income that he was capable of earning in 2010. Moreover, the evidence indicates that the petitioner continues to work for his parents, both in the restaurant business and the rental real estate business; his salary is set by his mother; and he receives additional compensation from his parents and/or their business(es) in the form of free rent and utilities.

The petitioner's challenge to his attributed income is nothing other than a challenge to the original ruling entered by the family court in 2010 and ultimately upheld by this Court in 2011. As we have previously recognized, "the child support modification process under W. Va. Code, 48-11-105 cannot be used to . . . relitigate the findings made in a prior support order." *Allen v. Allen*, 226 W.Va. 384, 389, 701 S.E.2d 106, 111 (2009) (citing *Ray v. Ray*, 216 W.Va. 11, 602 S.E.2d 454 (2004), *overruled in part on other grounds by Allen*, 226 W. Va. at 386, 701 S.E.2d at 108, syl. pt. 4). Absent proof of a change in the petitioner's earning capability, the attribution of $19,000 per month in gross income is the law of this case. *See* Syl. Pt. 1, *Mullins v. Green*, 145 W. Va. 469, 115 S.E.2d 320 (1960) ("The general rule is that when a question has been definitely determined by this Court its decision is conclusive on parties, privies and courts, including this Court, upon a second appeal or writ of error and it is regarded as the law of the case."). As such, we find no abuse of discretion in the lower courts' rejection of the petitioner's request to stop attributing gross income to him in the amount of $19,000 per month.

**B. Respondent Tamra P.'s income:**

Next, we turn to the issue of the respondent's income. The petitioner's petition to modify asserted that the respondent has had a significant increase in income since the 2010 child support order was entered, and the evidence presented to the family court proved this assertion. Unfortunately, the family court's final order failed to include any findings of fact specifying the respondent's current income. However, according to the federal tax return that is in the appendix record, the respondent's gross income in 2017 was

13

$165,338, which averages to be $13,778 a month. In addition, there is a "Worksheet A: Basic Shared Parenting" form in the appendix record indicating that the respondent has a current gross income of $9,364 a month. Either of these figures is significantly higher than the respondent's monthly average of $2,917 in 2010. It is obvious that application of the child support guidelines using the respondent's 2017 income would result in a new order that is more than fifteen percent different. *See* W. Va. Code § 48-11-105(b). As such, there has been a substantial change in circumstances warranting a modification. *See id.* Despite this clear change in circumstances, the family court failed to make any findings of fact regarding the respondent's income and failed to modify the child support award on this basis.

When refusing to make this modification, the family court noted that the petitioner is in arrears on his child support obligation and has been held in contempt for the failure to pay child support. The family court concluded "[t]hat pursuant to West Virginia case law the Court has the authority to decline to modify a court order if the court finds the moving party has unclean hands or is in contempt of Court." To support this conclusion, the family court cited, without any discussion, two cases: *Scott v. Scott*, 98 W. Va. 553, 127 S.E. 327 (1925), and *Levine v. Levine*, 165 W. Va. 327, 270 S.E.2d 137 (1980).

This Court held in both *Scott* and *Levine* that a court may refuse to modify a support order if the support obligor is in contempt of the court. Specifically, the sole syllabus of *Scott* provides that

> [i]n the suit of a husband for absolute divorce, where the wife files an answer and cross-bill praying for like relief, the trial court may decline to hear the cause, or entertain the motion of the plaintiff to vacate or modify decrees directing the payment of suit money and alimony pendente lite, while the plaintiff is in contempt of court for failing to comply with the decrees; it appearing that he has ample means to discharge the allowances, which are not alleged to be excessive.

*Scott*, 98 W. Va. at 553, 127 S.E. at 327. Syllabus point 1 of *Levine* provides: "In a suit for divorce, in which a petition is filed to modify a prior order pursuant to W. Va. Code, 48-2-15, the court may decline to hear the petition if the petitioner is in contempt of a previous decree." *Levine*, 165 W. Va. at 327, 270 S.E.2d at 138. Notably, while the petitioner was most certainly behind on his child support payments, the petitioner was not in contempt of court at the time the family court entered the June 2018 final order. The appendix record reflects that his most recent contempt had been purged when he made a payment using $10,000 given to him by a friend. Moreover, in the context of spousal support, our Court has recognized that when a support obligor is in arrears, "the primary standard to determine whether or not a trial court should modify an order awarding alimony is a substantial change of circumstances." *Zirkle v. Zirkle*, 172 W. Va. 211, 217, 304 S.E.2d 664, 671 (1983). This recognition applies with equal force to child support. In *Levine*, the Court ultimately allowed a modification of child support due to a change in circumstances, even though the support obligor was behind on his payments. 165 W. Va. at 329, 270 S.E.2d at 139. Thus, we do not find *Scott* or *Levine* to be dispositive of our analysis.

15

The doctrine of "clean hands" or "unclean hands" is an equitable concept that has been described as follows:

> Whenever and if it is made to appear to the court that by reason of fraudulent or other unconscionable conduct, the plaintiff has lost his right to invoke a court of equity, the court will, on the motion of a party, or its own motion, wash its hands of the whole. Indeed, this Court may, *sua sponte*, invoke the doctrine of unclean hands to invoke an equitable and just result. *Foster v. Foster*, 221 W. Va. 426, 431, 655 S.E.2d 172, 177 (2007) (internal citations omitted)[.]

*U.S. Exploration, LLC v. Griffin Producing Co.*, __ W. Va. __, __, 844 S.E.2d 89, 98 (2020); *accord Province v. Province*, 196 W. Va. 473, 484, 473 S.E.2d 894, 905 (1996) (recognizing "the equitable maxim that a party who seeks equity must come with clean hands"). We strongly disapprove of the petitioner's failure to pay his full child support obligation. Nonetheless, we conclude that the circuit court abused its discretion when applying the unclean hands doctrine to exclude consideration of the respondent's current income. The respondent's gross income has very significantly increased since 2010; apparently, it is now anywhere from $6,447 to $10,861 greater each month than it was when the original child support order was entered. Given this significant increase, we believe that it would be unjust and inequitable to *not* take her income into account for purposes of calculating child support. This increase clearly satisfies the "substantial change in circumstances" test warranting a prospective modification of child support pursuant to West Virginia Code § 48-11-105, and the lower courts abused their discretion by failing to modify child support on this basis. On remand, the family court must make findings of fact

16

ascertaining the respondent's income as of the February 2018 petition to modify child support and must recalculate child support using that information.

## C. Change in residence of Z.G.-1 and Z.G.-2:

Finally, we turn to the petitioner's third basis for requesting a modification of the parenting plan and child support order: the fact that the two oldest children now reside with him, instead of with the respondent. The original parenting plan called for all three children to live in the respondent's home, and that was accounted for in the 2010 child support award. The petitioner indicates that Z.G.-1 and Z.G.-2 have now elected to live with him, while Z.G.-3 continues to live with the respondent, thus the living arrangement constitutes split custody. When there is split custody, West Virginia Code § 48-13-503 (2001) provides for an offset on child support:

> In cases with split physical custody, the court shall use Worksheet A as set forth in section 13-403 [W. Va. Code § 48-13-403] to calculate a separate child support order for each parent based on the number of children in that parent's custody. Instead of transferring the calculated orders between parents, the two orders are offset. The difference of the two orders is the child support order to be paid by the parent with the higher sole-parenting order.

Both children are teenagers who are old enough to express a preference on custody. When this petition for modification was filed in February of 2018, Z.G.-1 was sixteen years old and Z.G.-2 was fifteen years old. Pursuant to statute, the family

> court may modify any provisions of the parenting plan without the showing of change[d] circumstances required by § 48-9-401(a) if the modification is in the child's best interests, and

17

> the modification: . . . (3) Is necessary to accommodate the reasonable and firm preferences of a child who[] has attained the age of fourteen[.]

W. Va. Code § 48-9-402(b)(3) (2020)[8]; *accord* W. Va. Code § 48-9-206(a)(2) (2020) (recognizing that custodial preference of child who is fourteen or older shall be accommodated if in child's best interests).

The family court made findings of fact in its May 2, 2018, Interim Order that Z.G.-1 lives with the petitioner and the petitioner's parents, and that Z.G.-2 lives with the petitioner. Nonetheless, the family court refused to modify the parenting plan in accordance with West Virginia Code § 48-9-402(b)(3) and refused to recalculate the petitioner's child support obligation in accordance with the split custody provision of West Virginia Code § 48-13-503. When making this decision, the family court relied upon the GAL's written report issued in 2017 that found the petitioner and his family had negatively influenced the minor children against the respondent by making derisive comments. After carefully reviewing the appendix record and the parties' arguments, we conclude that this decision was in error.

Notably, the GAL submitted a written report but did not testify to the contents of that report. The appendix record reflects that the evidentiary hearing scheduled pursuant

---

[8] Although this statute was amended in 2020, the amendments made only stylistic changes to this particular provision.

to a 2017 petition for modification was *sua sponte* canceled by the family court. The GAL was no longer appointed for this case when the hearings were held in 2018, thus he did not appear at or participate in those hearings. The family court was left to rely upon the written report that was not subject to cross-examination by the petitioner's counsel. In that report, the GAL admitted that he was unable to interview Z.G.-1 or Z.G.-2, although he blamed this on the petitioner. The GAL did interview Z.G.-3, but Z.G.-3 denied that the petitioner was saying negative things about the respondent "much anymore because he says he just doesn't care."[9] The GAL also pointed to hateful text messages that Z.G.-1 sent to the respondent, but Z.G.-1 has been diagnosed with oppositional defiance disorder and the GAL recounted how the child has also exhibited defiant behavior toward other people. Finally, the family court rejected the petitioner's request to hear from Z.G.-1 and Z.G.-2 *in camera* about their custodial preference or the allegation that the petitioner and his family were making derisive comments about the respondent.

This was obviously a bitter divorce, and there have been years of contentious post-divorce litigation. The petitioner and his family may have made derogatory comments about the respondent. Nonetheless, after reviewing the appendix record, we cannot conclude that there is sufficient evidence to justify the family court's decision to ignore the statute regarding a teenager's preference for custody or the statute providing for an offset in child support in a split custody situation. Accordingly, we conclude that it was error for

---

[9] *See supra*, n. 7.

the lower courts to have refused to modify the parenting plan and child support order on the basis of the change in the residence of the two oldest children.

### III.  Conclusion

For the foregoing reasons, we affirm the circuit court's order to the extent that it affirmed the family court's decision to continue attributing $19,000 per month in gross income to the petitioner. However, we reverse the portions of the circuit court's order that allowed the family court to refuse to modify the parenting plan and child support award on the basis of the respondent's higher income and the current custodial arrangement. This case is remanded to the family court to hold a hearing; make findings of fact and conclusions of law regarding child support, including a finding of fact ascertaining the respondent's gross income; and to enter a modified child support order in accordance with the provisions of this opinion.

Affirmed, in part, reversed, in part, and remanded with instructions.